17 N.J. Super. 137 (1952)
85 A.2d 534
STATE OF NEW JERSEY, AT THE RELATION OF JAMES M. MATTHEWS, SUBSTITUTED ADMINISTRATOR OF THE ESTATE OF MARION M. TAYLOR, DECEASED, PLAINTIFF-APPELLANT,
v.
NATIONAL SURETY CORPORATION, A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1951.
Decided January 9, 1952.
*139 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Walter S. Keown argued the cause for appellant.
Mr. William G. Bischoff argued the cause for respondent (Messrs. Carroll, Taylor & Bischoff, attorneys).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
On June 13, 1951, judgment was entered in the Superior Court, Chancery Division, against the defendant, the surety on an administrator's bond, in the sum of $2,128.62, representing the amount undistributed and unaccounted for by the administrator, together with simple interest thereon at four per cent from November 4, 1939, to the date of the judgment. The only question presented is whether the trial court erred in limiting the interest charge to four per cent simple interest.
Marion M. Taylor died intestate July 7, 1937, leaving surviving her husband, Thomas D. Taylor, and three children  Donald, born June 5, 1924; Elaine, born August 24, 1926; and Spafford, born December 1, 1927. The only asset of her estate was a claim for damages for her death. Letters of administration were issued to Thomas D. Taylor, her husband, on August 13, 1937, and the present defendant became the surety on his bond as administrator. In November, 1938, the claim for damages was settled for $7,500. In December, 1938, Thomas D. Taylor remarried and thereafter lived with his second wife and his three children until his death on April 14, 1942. He died intestate without assets and without having filed either inventory or account as administrator of the estate of Marion M. Taylor.
*140 On June 17, 1948, the present plaintiff, James M. Matthews, was appointed substituted administrator of the estate of Marion M. Taylor, and thereafter brought this suit on the original administrator's bond. The defendant surety prepared and filed an accounting of the administration of Thomas D. Taylor and the plaintiff filed exceptions thereto. The court approved an account which charged Thomas D. Taylor, as administrator, with $7,500 and credited him with $5,371.38 (including $2,032.83 as his share of the estate), leaving a balance undistributed and unaccounted for amounting to $2,128.62.
A search was made to ascertain what had become of the $7,500. Examination of the bank account of the attorney who represented the administrator ad prosequendum disclosed that the $7,500 paid in settlement was deposited in this attorney's account. This deposit was exhausted by payment of the attorney's fee and four checks drawn by him: one check to the order of Thomas D. Taylor, guardian of Spafford Taylor, for $545.69; a second check to the order of Thomas D. Taylor, guardian of Donald R. Taylor, for $695.68; a third check to the order of Thomas D. Taylor, guardian of Elaine Taylor, for $695.68; and a fourth check to the order of Thomas D. Taylor, administrator, for $4,288.53. Nothing was discovered which threw any light on the unusual distribution made by the four checks. There was evidence that Thomas D. Taylor in April, 1939, purchased a home for $5,500, on which he made a down payment of $2,000, but it does not appear in the record whether this payment was made in currency or by check. No trace of the $4,288.53 received by Thomas D. Taylor, as administrator, was found, unless it be assumed that the $2,000 down payment on the home came from this fund.
The plaintiff argues that the only inference which could be reasonably drawn from the facts in this case is that the administrator was guilty of gross misconduct and consequently he should have been charged with six per cent interest, compounded annually.
*141 When a trustee commits a breach of trust and becomes liable for a sum of money, he is ordinarily liable for interest thereon. Where, as here, there is no proof that the trustee received any interest or should have received any particular rate of interest thereon, interest, either simple or compound, may be charged at the legal rate or at the current rate on trust investments, or at some other rate, as the court in its sound discretion may determine. Restatement, Trusts, § 207 (1935); 2 Scott on Trusts, § 207 et seq. (1939); see annotations 37 A.L.R. 447, 55 A.L.R. 950, 112 A.L.R. 833, 156 A.L.R. 936. The court's discretion must be exercised equitably in the light of the character of the breach of trust and the degree of fault of the trustee under all the circumstances. In re Ebert, 136 N.J. Eq. 123 (Prerog. 1945); Liberty Title & Trust Co. v. Plews, 6 N.J. Super. 196, 212 (App. Div. 1950), modified on other grounds 6 N.J. 28 (1950); 2 Scott on Trusts, §§ 207.1, 207.2 (1939). Unless the trustee acted in bad faith or intentionally committed a breach of trust, the usual charge is simple interest at a rate which will give the beneficiaries the amount they would have received if no breach of trust had been committed. In re Ebert, above; The Pennsylvania Company, &c., v. Gillmore, 142 N.J. Eq. 27 (Ch. 1948); 2 Scott on Trusts, §§ 207.1, 207.2 (1939).
Interest at six per cent, compounded annually, was charged in cases such as McKnight's Executors v. Walsh, 24 N.J. Eq. 498 (E. & A. 1873), on a finding that the fiduciary had invested the fund in his own business; in French v. Armstrong, 79 N.J. Eq. 289 (Ch. 1912), in which the fiduciary had made personal use of the fund for more than eight years without paying any interest; in Windmuller v. Spirits Distributing Co., 83 N.J. Eq. 6 (Ch. 1914), in which the fiduciary had loaned the fund to a third person for use in business; and in Clark v. Clark, 87 N.J. Eq. 504 (Ch. 1917), in which the fiduciary co-mingled funds and appropriated them to his own use. The trustee was charged with simple interest at four per cent in Liberty Title & Trust Co. v. *142 Plews, above, although it was found guilty of dealing with the trust estate for its own profit and of having acted for its own self-interest.
Here, the fiduciary, from whom discovery could be obtained, had been dead for over six years before the institution of these proceedings. Investigation disclosed nothing showing that he had made any use of the fund, let alone that he had made an improper use thereof. There is only the negative fact that the fund was not brought in as it should have been. Cf. Rocke v. Hart, 11 Ves. Jun. 58 (1805), 32 Eng. Repr. 1009. An appellate court will not interfere unless the interest charged is palpably unfair. Re Stone, 138 Ohio St. 293, 34 N.E.2d 755, 134 A.L.R. 1306 (1941). The charge of four per cent simple interest will give the beneficiaries the amount of interest they would have received had no breach of trust occurred, and under the circumstances we see no reason for disturbing it.
Judgment affirmed.